**ZANA BUGAIGHIS**, *Pro Hac Vice Pending*
zanabugaighis@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8304
Facsimile: (206) 757-7304


**CHRIS SWIFT**, OSB #154291
chrisswift@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ISOSCELES HOLDINGS, LLC d/b/a VENTURI RESTORATION, | Case No. _____ |
| **PLAINTIFF**, | **COMPLAINT** |
| v. | **28 U.S.C. § 1331** |
| ALLIANCE ENVIRONMENTAL GROUP, LLC, BRANDYN CARROLL, OLIVIA JOHNSON, and NATHAN KAZLAUSKAS, | |
| **DEFENDANTS**. | |

Plaintiff Isosceles Holdings, LLC, d/b/a Venturi Restoration ("Venturi") files this

Complaint against Defendants Alliance Environmental Group, LLC ("Alliance"), Brandyn

Page 1 - COMPLAINT

Carroll ("Carroll"), Nathan Kazlauskas ("Kazlauskas"), and Olivia Johnson ("Johnson") (collectively Carroll Kazlauskas, and Johnson are the "Former Employees"), alleging as follows:

## SUMMARY

1.

This is a case about unfair competition and the misappropriation of trade secrets.  Venturi provides commercial and residential disaster recovery and environmental restoration, remediation, and reconstruction services in multiple states—including Washington, Oregon, California, and Arizona—and across multiple industries, including working for property management companies, fulfilling insurance referrals, and supporting governmental entities. Defendant Alliance operates in the same territories as Venturi, but as a subcontractor specializing in duct cleaning, insulation removal, and abatement, not as a general contractor.  In the first week of June 2023, Defendant Alliance hired 15 Venturi employees in Seattle, Portland, and Arizona to positions highly similar or identical to their previous positions at Venturi.  While Venturi did not previously consider Alliance a competitor, Alliance's actions demonstrate it intends to shortcut building a competing business by unfairly capitalizing off of Venturi's efforts and goodwill to unfairly solicit Venturi employees and customers.  The Former Employees appear intent on assisting Alliance's efforts by also soliciting Venturi's employees and customers and by misappropriating Venturi's confidential and proprietary information and trade secrets.

2.

As a condition of their employment, the Former Employees executed the Isosceles Holdings, LLC Employee Confidentiality & Non-Compete Agreements (the "Confidentiality Agreement").  The Confidentiality Agreement obligates the Former Employees to (1) protect confidential and proprietary Venturi information and prohibits the wrongful use or disclosure of that information; and (2) not to solicit, or assist third parties in soliciting, Venturi's customers or employees during or within the twelve months following their employment (the "Restrictive Period).  The Confidentiality Agreement further contains a non-competition provision that

Page 2 - COMPLAINT

prohibits one of the former employees, Kazlauskas,[1] from competing unfairly with Venturi during the Restrictive Period, including by performing the exact same job duties for Alliance that he just days earlier performed for Venturi.

3.

Alliance and the Former Employees have conspired to solicit Venturi employees and customers in violation of the Former Employees' Confidentiality Agreements. Alliance solicited Venturi's employees, offering them employment in identical or substantially similar positions to those they currently hold at Venturi.  Because these positions required Venturi's former employees to solicit Venturi's present and prospective customers, Alliance induced Venturi's employees to breach the terms of the Confidentiality Agreement.  Venturi has also discovered at least one Former Employee, Carroll, intentionally misappropriated Venturi confidential and proprietary information and trade secrets for the benefit of his new employer, Alliance.  While Alliance eventually claimed it would respect Venturi's Confidentiality Agreement and encourage the Former Employees to do the same, Alliance and the Former Employees have failed to do so, threatening immediate and irreparable harm to Venturi's business.  As a result, Venturi has been forced to request this Court's assistance in obtaining the Former Employees' compliance with their contractual obligations and any damages it has suffered as a result of their violation and Alliance's interference.

**PARTIES**

4.

Venturi is a Delaware limited liability company registered to do business in multiple states, including Oregon.  Venturi is a wholly owned subsidiary of ATI Restoration, LLC.

---

[1] The non-competition provision applies only to Kazlauskas, it does not apply to Carroll or Johnson.

Page 3 - COMPLAINT

5.

Alliance is a California limited liability company registered to do business in multiple states, including Oregon.

6.

Carroll is a former Venturi employee and current Alliance employee who is a resident of Sherwood, Oregon and whose wrongdoing arises in part from his work in Oregon.  .

7.

Kazlauskas is a former Venturi employee and current Alliance employee who up until late May 2023 lived in Missouri and worked in multiple states for Venturi, including Oregon, and whose wrongdoing arises in part from his work in Oregon.

8.

Johnson is a former Venturi employee in Oregon and current Alliance employee who is a resident of Oregon and whose wrongdoing arises in part from her work in Oregon.

## JURISDICTION AND VENUE

9.

This Court has subject matter jurisdiction under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1832-1839 ("DTSA") and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C),which provide federal question jurisdiction over federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

10.

This Court has personal jurisdiction over Defendants because the facts underlying the matters in controversy substantially occurred within the State of Oregon; Venturi's claims arise from Defendants' conduct against Venturi that either occurred in or were directly aimed at

Page 4 - COMPLAINT

Oregon; Carroll and Johnson are Oregon citizens; and Alliance conducts regular, sustained business in Oregon.

11.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the District of Oregon.

## FACTS

**A.    The Former Employees' Confidentiality Agreements with Venturi Protect Venturi's Legitimate Business Interests.**

12.

In Fall 2021, all of the Former Employees executed the Confidentiality Agreement as a condition of their employment with Venturi.

13.

In the Confidentiality Agreement, the Former Employees promised to abide by non-disclosure and non-solicitation restrictions.  These restrictions protect Venturi's trade secrets and its highly confidential information, as well as Venturi's current and prospective customer relationships, its existing and prospective business relationships, and its confidential plans, developments, and strategies.

14.

As defined in the Confidentiality Agreement, "Confidential Information" includes trade secrets and other sensitive, non-public information:

> Confidential Information may be of a technical or business nature and includes, without limitation, trade secrets, plans and prospects for new or modified services, service know-how and implementation, innovations, programs, reports, studies, methods, customer and supplier lists, customer service requirements, customer projects, any information provided by a customer or business relation, costs of providing services, operating costs, pricing structures, bids, business prospects and plans, training programs and manuals, marketing or business plans, bidding techniques, and sales and marketing materials and strategies. Confidential Information may be in written, taped/video, electronic

Page 5 - COMPLAINT

> or other form. Confidential Information shall not include any
> information which (a) that is or becomes generally available to the
> public other than as a result of an unauthorized disclosure by the
> Employee (b) was rightfully acquired by Employee from a third
> party who was lawfully in possession of the information and was
> under no obligation to anyone to maintain its confidentiality; (c) is
> required to be disclosed by the Employee pursuant to judicial order
> or other compulsion of law, provided that Employee shall provide
> to the Company prompt notice of such order and comply with any
> protective order imposed on such disclosure.

Ex. 1 at 1, § 1.1.

15.

The Confidentiality Agreement imposes an ongoing obligation on the Former Employees

to maintain the confidentiality of Venturi's Confidential Information:

> 1.1. ***Company Confidential Information.*** During and after
> Employee's employment with the Company, Employee will
> protect and hold in strictest confidence all Confidential
> Information of the Company, its clients and business relations. * *
> *
>
> 1.2. ***Ownership and Use of Confidential Information.*** All
> Confidential Information is intended to be and remain confidential.
> Confidential Information that is made available to the Employee or
> that the Employee conceives, creates, develops, reduces to
> practice, or compiles, either alone or with others, during the term
> of Employee's employment shall be the exclusive property of the
> Company. The Employee shall preserve in confidence and shall
> not disclose, use, share, copy, publish, summarize or remove,
> either during or after the term of Employee's employment, any
> Confidential Information, except as required in Employee's work
> for the Company or as authorized in writing by the Company in
> each instance. * * *

Ex. 1 at 1, §§ 1.1-1.2.

16.

Indeed, the Confidentiality Agreement expressly required the Former Employees to

return all confidential information in their possession or control when their employment by

Venturi ended:

> Upon termination of the Employee's employment with the
> Company, or upon request of the Company at any time, the
> Employee shall deliver to the Company all forms of materials in
> Employee's possession or control that contain or embody any

Page 6 - COMPLAINT

> Confidential Information and shall purge or otherwise destroy all
> Confidential Information not capable of being returned.

Ex. 1 at 1-2, § 1.2.

17.

The Former Employees also agreed not to solicit Venturi's employees or customers

during their employment or during the Restrictive Period:

> 2.2. Employee further agrees that during the [Restrictive Period],
> Employee will not call on, reveal the name of, or otherwise solicit,
> accept business from or attempt to entice away from the Company
> any actual or identified potential customer of Company, nor will
> Employee assist others in doing so. Employee further agrees that
> Employee will not, during the [Restrictive Period], encourage or
> solicit or assist others to encourage or solicit any other employee
> or consultant of Company to leave such employment for any
> reason.

Ex. 1 at 2, § 2.2.

18.

In addition, Kazlauskas further agreed that he would not unfairly compete with Venturi

during his employment and for the Restrictive Period, such as by assisting a competitor in the

development, sales strategies, best practices, support, marketing, or solicitation of multi-family

and commercial accounts, such as property management companies—the very area he helped

grow and develop for Venturi.  Ex. 1 at 2, § 2.1.

19.

The Former Employees further agreed that these restrictions were "reasonable in

relation" to Venturi's business and the Former Employees' position and knowledge of that

business:

> 2.3. Employee acknowledges that the covenants in Sections 2.1
> and 2.2 are reasonable in relation to the business in which
> Company is engaged, the position Employee has been afforded
> with Company, and Employee's knowledge of Company's
> business, and that compliance with such covenants will not prevent
> Employee from pursuing Employee's livelihood. However, should
> any court of competent jurisdiction find that any provision of such

Page 7 - COMPLAINT

> covenants is unreasonable, whether in period of time, geographical area, or otherwise, then in that event the Parties agree that such covenants shall be interpreted and enforced to the maximum extent which the court deems reasonable.

Ex. 1 at 2, § 2.3.

20.

Under the Confidentiality Agreement, the parties also agreed that irreparable harm could result from any breach or threatened breach of the agreement and that injunctive relief was therefore appropriate to enforce its terms:

> **3. Remedies.** Employee acknowledges that the harm to Company from any breach or threatened breach of Employee's obligations under or related to this Agreement may be difficult to determine and may be wholly or partially irreparable and such obligations may be enforced by injunctive relief and other available remedies at law or in equity. Company in its sole discretion shall be entitled to inform third parties of the existence of this Agreement and of Employee's obligations hereunder.

Ex. 1 at 2-3, § 3.

21.

Finally, the Confidentiality Agreement authorizes an award of reasonable attorneys' fees and costs incurred in enforcing the agreement:

> 4.1. **Attorney Fees.** The prevailing Party in any action to enforce the terms of this Agreement shall be entitled to reasonable attorneys' fees and costs incurred in connection with such litigation.

Ex. 1 at 3, § 4.1.

22.

Venturi's Confidential Information is the result of significant and long-term investments of money and resources, and Venturi takes extensive steps to keep them confidential.

23.

During their employment with Venturi, the Former Employees' responsibilities required them to access and use Confidential Information covered by the Confidentiality Agreement.  As

Page 8 - COMPLAINT

a result, the Former Employees had knowledge of Venturi's Confidential Information and the significance of that information to Venturi's competitive strategies.

**B.    Alliance and the Former Employees Conspire to Breach the Confidentiality Agreement and Solicit Venturi's Customers.**

**1.    Alliance Placed the Employees in Identical Positions as they Held at Venturi.**

24.

Prior to June 2023, Alliance was a trusted subcontractor of Venturi who acted in a limited capacity, primarily in the area of abatement of environmental toxins such as asbestos.  Alliance also was not a player in the space of restoration, remediation, and reconstruction services and did not compete with Venturi for customers or employees.  Alliance is now intent on expanding its portfolio by taking Venturi's employees and customers for their benefit and profit.  Alliance placed the Former Employees in positions at Alliance requiring them to compete against Venturi and solicit Venturi's customers.

25.

On or about January 30, 2019, Alliance signed a Master Subcontractor Agreement (the "2019 Subcontractor Agreement") with Response Team 1 National Services, LLC ("RT1NS")— a wholly owned subsidiary of Venturi—and RT1NS's corporate affiliates, including Venturi. Alliance heavily negotiated this Agreement, with multiple strikethroughs and handwritten changes.  In the Subcontractor Agreement, Alliance agreed that information contained in the Alliance's work orders from Venturi, among other documents, were Venturi's confidential and proprietary information and constituted Venturi's trade secrets.  Alliance further agreed that while the 2019 Subcontractor Agreement was in effect and for two years after it was terminated, neither Alliance nor its officers, directors, agents, members or employees would "solicit or accept business from any contract or business relationship of any kind with any [Venturi] customer serviced by Alliance for Venturi.

Page 9 - COMPLAINT

26.

On or about February 24, 2023, the General Counsel of Alliance signed a new Master
Subcontractor Agreement (the "2023 Subcontractor Agreement") with Venturi National
Services, LLC")—a wholly owned subsidiary of Venturi—and Venturi National Services's
corporate affiliates, including Venturi.   This Agreement is substantially similar to the 2019
Agreement but does not contain any markups and also contains a requirement that Venturi's
confidential information be kept private by Alliance and shall not be used or disclosed by
Alliance for any purpose besides its work for Venturi.  The 2023 Subcontractor Agreement
supersedes the 2019 Subcontractor Agreement.

27.

Beginning in September 2021, Carroll was the construction manager for Venturi in
Seattle, Washington.  In April 2023, Carroll moved to Portland to become Venturi's Office
General Manager.  Once Carroll moved to Oregon he was not responsible for Seattle operations
and had no reason to access materials related to Seattle's future or ongoing mitigation projects.
Throughout his employment with Venturi, Carroll worked in Venturi's offices as a manager and
also visited job sites.  Carroll was responsible for the health of the office he managed, sales,
project and employee management, and client relations.

28.

On or about June 1, 2023, Carroll resigned from Venturi to work for Alliance in
an identical position as Branch Manager of Alliance's Portland office.  Carroll's responsibilities
in his new position with Alliance appear to substantially overlap with those in his former
position with Venturi, including soliciting Venturi customers.

29.

The day after Carroll resigned, two of the employees who worked for Carroll at Venturi
also resigned from Venturi to work for Carroll, directly or indirectly, in identical or substantially
similar positions at Alliance.

Page 10 - COMPLAINT

30.

Beginning in August 2021, Kazlauskas was a Senior Operations Manager for Venturi in Seattle, Washington.  On or around March 2022, when Kazlauskas was promoted to Venturi Regional Vice President of the West Coast, including Washington, Oregon, California, and Arizona, Kazlauskas moved to Missouri.  For a period of time, Kazlauskas was also responsible for Venturi's offices in Greensborough, North Carolina. At the time of his departure, Kazlauskas had approximately 10 direct reports and supervised approximately 100 employees.  As Venturi Regional Vice President, Kazlauskas reported directly to Mitch Martin, Chief Operating Officer at Venturi.  All West Coast regional managers at Venturi reported to Kazlauskas.  As part of his job responsibilities, Kazlauskas would attend, virtually or in person, all West Coast region's weekly production meetings where management would review all of the current jobs Venturi was working on, accounts receivable, and problems with collections, among other management issues.  Kazlauskas would also manage all West Coast regional customer or a third-party administrator program escalations.

31.

Kazlauskas had primary responsibility for growing and supporting Venturi's business with owners or managers of multi-family properties and commercial rental properties—and developing standard operations procedures for these customers.  Kazlauskas led his team in setting the strategic priorities, best practices, and sales plans across and supporting and serving those accounts.  Venturi paid Kazlauskas to travel extensively to meet with customers and oversee different offices' operations.  Kazlauskas also participated in trade shows.

32.

Kazlauskas spent approximately 2-5 days a month in each of Oregon, Washington, California, and Arizona with the remainder in Missouri.  In 2022, when Kazlauskas also managed Venturi's offices in Greensborough, North Carolina, the amount of time he spent in the other offices was reduced.

Page 11 - COMPLAINT

33.

On or about May 16, 2023, directly prior to his resignation from Venturi, Venturi paid Kazlauskas to relocate to Washington. Weeks later, on the morning of June 2, 2023, Kazlauskas resigned to work for Alliance in a similar or identical position to that he held at Venturi.

34.

Johnson is also a former Venturi employee who previously worked for Venturi as an estimator in its Portland, Oregon office. Johnson developed client relationships with Venturi customers while at Venturi. On or about June 2, 2023, Johnson resigned to work for Alliance in a substantially identical position.

**2.    Alliance Encouraged the Former Employees to Solicit Other Venturi Employees.**

35.

Alliance has also induced Venturi's employees to solicit other Venturi employees to join Alliance in breach of their obligations under the Confidentiality Agreement.

36.

Beginning on at least May 30, 2023, Carroll began assisting Alliance in unfairly soliciting Venturi employees by accessing a Venturi Google Sheet titled Venturi Staff Worksheet—the first time he accessed this sheet for the entire history of his Venturi computer. The same day, Carroll additionally reviewed multiple Venturi Google Sheets presumably for the purpose of providing Venturi's confidential and proprietary information and trade secrets to Alliance, including Venturi's PDX Structure Schedule and PDX Mitigation Spreadsheet—documents that list detailed information regarding *every* Venturi project in the Portland market.

37.

Venturi also discovered that Kazlauskas had solicited Venturi employees to join him at Alliance, including multiple calls to convince employees to participate in interviews with Alliance and participating in a phone call with Alliance and a Venturi employee to convince that

Page 12 - COMPLAINT

employee to work for Kazlauskas at Alliance.  Because Kazlauskas managed all the former Venturi employees, he knew their salaries, their job responsibility preferences and advancement desires, and any concerns they might have with their current positions at Venturi.  Kazlauskas used this information, and his personal relationship with these employees developed while at Venturi, to unfairly solicit Venturi employees to join him at Alliance.

### 3.    Carroll Misappropriates Venturi Confidential and Proprietary Information and Trade Secrets for Alliance's Benefit.

38.

Venturi's forensic analysis of Carroll's computer shows that Carroll used his Venturi computer without authorization post-resignation.  The computer demonstrates that pre- and post-resignation, Carroll accessed confidential Venturi documents—despite having no authorization to do so—for Alliance's benefit.

39.

After Carroll's departure, and despite Carroll's attempts at wiping his laptop, Venturi discovered that on May 31, 2023—just one day prior to his resignation from Venturi—Carroll transferred control of certain Venturi Google Sheets used to conduct Venturi's day-to-day operations from his Venturi employee email address to his personal email address.  As a result, Carroll was able to continue accessing the Google Sheets on behalf of Alliance, even after Venturi terminated his access to his employee email account.

40.

In fact, Carroll opened the stolen Google Sheets multiple times following his resignation—from June 2 to June 26—and, on information and belief, has continued to access the documents and/or provide access to others at Alliance.  Venturi has every reason to believe that Carroll intends to share or use the highly confidential and proprietary documents and/or the information contained therein that he misappropriated from Venturi with Alliance, which will allow Alliance to unfairly compete with Venturi.

Page 13 - COMPLAINT

41.

Venturi has over twenty Google Sheets containing confidential and proprietary information and trade secrets owned by Venturi and protected by the Confidentiality Agreement. For example, the Account includes the Portland and Seattle Mitigation Spreadsheets that detail each Venturi job name and number across Oregon and Washington, the dollar amount of each estimate and the date it was approved, the estimator's name, the project manager assigned, and details about the jobs, including the customer name and unit numbers, the current status, equipment necessary, and notes regarding any concerns or problems for each workday of each project. Similarly, the PDX Structure Schedule and Seattle Construction Schedule list the timelines and scheduled Venturi and subcontractor work dates for every Portland and Seattle project. The other spreadsheets include individual commercial job spreadsheets and a staff worksheet, among others. In breach of his obligations under that Agreement, Carroll has continued to control and access Venturi's Google Sheets even resigning from Venturi and becoming an Alliance employee. He further denied Venturi access and control over their own worksheets.

42.

On June 1, 2023, the same day Carroll submitted his resignation to Venturi, Carroll accessed the PDX Structure Schedule, Venturi's LockboxRoster (containing access information for all ongoing Venturi projects), the PDX Restoration Ticket, the Seattle Construction Schedule, and the PDX Mitigation Spreadsheet, just minutes before and after he searched for "how to write a letter of resignation" and "how to attach resignation letter to email." Venturi did not authorize Carroll to access documents for the use of Alliance, nor did it authorize Carroll to transfer or access the Google Sheets through his personal email address, nor was Carroll doing so within the scope of his employment responsibilities.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201
(503) 241-2300 main · (503) 778-5299 fax

43.

The Venturi's Google Sheets contain numerous documents containing trade secrets and other highly confidential and proprietary information belonging to Venturi. A competitor's access to these items could serve to make Venturi competitively vulnerable to attempts to unfairly solicit its customers, underbid its estimates, and capitalize on project weaknesses and could also wreak havoc on Venturi's business by allowing a competitor to modify Venturi's data leaving it unable to complete its responsibilities. Because of Carroll's misappropriation, Venturi is unable to block access to these spreadsheets as it is no longer the administrator on the accounts.

44.

Carroll ignored Venturi's request to return control of the account to Venturi, destroy all confidential information in his possession, and comply with his promises not to use or disclose Venturi's confidential information or solicit its customers.

**4.    Kazlauskas Wipes his Computer Without Authorization in Violation of his Confidentiality Agreement.**

45.

. After Kazlauskas's departure, Venturi discovered that rather than return his Venturi laptop intact, Kazlauskas wiped his Venturi MacBook by setting it to a factory default setting. Doing so wiped all of Venturi's data and, on information and belief, was an intentional act by Kazlauskas to cover up evidence of Kazlauskas's wrongdoing.

**5.    The Former Employees and Alliance Continue to Solicit Venturi Customers.**

46.

. The Former Employees' wasted no time in soliciting Venturi customers on behalf of Alliance.

Page 15 - COMPLAINT

47.

On May 25, 2023, prior to their resignations from Venturi, Carroll and Johnson used their Venturi email accounts to email with Anie Anyang and Cole Moore of Alliance regarding a project with Alliance for a Venturi customer.  Alliance forwarded a proposal for demolition at the residence to Johnson, cc'ing Carroll, and asking for the homeowner's email and phone number so that Alliance could include the contact information on the proposal.  Alliance states in its email "Thank you for the opportunity to work with you and your team down there," demonstrating this customer project originally began with Alliance working as a subcontractor for Venturi.  The next day, Johnson replied looking for an invoice for the proposal amount and Alliance replied that they would start set up on June 1, which Olivia confirmed would work for the homeowners.  Days later, Carroll reached out to Alliance to let them know the homeowners reached out to another Venturi employee, Zakary Porter (added to the email), to delay.  On June 5, 2023, Johnson asked Alliance for an ETA on technicians.  Yet despite these emails and Venturi's records of multiple past projects for this customer in 2022 and 2023, there is no record of this May 2023 project in Venturi's systems.  It appears that both Alliance and the Former Employees conspired to take this project for Alliance instead of have it complete the project as a subcontractor for Venturi.

48.

On June 22, 2023, a current Venturi manager decided to visit the job site of an ongoing Venturi project and witnessed Johnson speaking to the realtor on the house about the mold remediation in the attic.  Johnson wrote the original estimate of loss for the project on behalf of Venturi.  With the benefit of her knowledge of Venturi operations and this project, the Johnson would have known when Venturi employees would be on-site in an attempt to avoid detection.  .

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

49.

Venturi further discovered that Kazlauskas also solicited Venturi customers since starting work at Alliance, including property management companies for whom Kazlauskas owned client relationships for years.  Kazlauskas's solicitation has led to a decrease in work for Venturi.

50.

On June 30, 2023, a Venturi customer mistakenly emailed Porter and Kazlauskas at their Venturi email accounts instead of their Alliance emails to discuss a bid from Alliance and the Former Employees for a mitigation project, to be serviced by another former Venturi employee Harold Segar.

51.

Venturi's forensic analysis is ongoing.  These are only some of the examples of the Former Employees and Alliance's collusion to steal Venturi's employees, customers, confidential and proprietary information and trade secrets, and business.

52.

Alliance will need standard operating procedures for mitigation and remediation projects and for working with certain types of customers, such as multi-family, insurance, and government.  Kazlauskas has developed these procedures for Venturi and could use his Venturi templates to develop standard operating procedures for Venturi.  Additionally, because Venturi wishes to grow its restoration business, Kazlauskas will likely call upon his Venturi multi-family and commercial accounts, such as property management companies, to divert business from Venturi to Alliance.  Kazlauskas, Carroll, and Johnson all had extensive knowledge of and access to detailed Venturi customer information that they can use, and have used, to steal Venturi customers.   These Former Employees also have extensive knowledge of Venturi employees that they can, and have used, to solicit Venturi employees.

Page 17 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

53.

Alliance and the Former Employees' violations of their Confidentiality Agreements will cause irreparable harm to Venturi, including allowing Alliance to unfairly compete with Venturi currently and in the future all with the benefit of Venturi's Confidential Information.

54.

Accordingly, Venturi asks this Court to enjoin Alliance and the Former Employees from using Venturi's misappropriated information and to enforce the terms of the Confidentiality Agreement to which the Former Employees agreed to be bound.

**C.    Alliance and the Former Employees Fail to Comply with Venturi's Cease-and-Desist Letters.**

55.

After Venturi discovered that Alliance solicited multiple former Venturi employees into identical roles at Alliance, Venturi's legal counsel sent a letter to Alliance's general counsel on June 9, 2023, demanding Alliance cease and desist from interfering with Venturi's Confidentiality Agreement with its former employees, from soliciting Venturi's employees and customers; and from misappropriating Venturi's Confidential Information.

56.

Alliance's counsel acknowledged receipt of Venturi's letter, but failed to provide written notice of compliance with Venturi's demands.

57.

On June 15, 2023, Venturi's counsel sent a cease-and-desist letter to Carroll, explaining his obligations under the Confidentiality Agreement and demanding that he comply with those obligations.

58.

On or around June 23, 2023, Venturi discovered Carroll's misappropriation of Venturi's Confidential Information.  That day, Venturi contacted Alliance's counsel to demand the return

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

of all misappropriated Confidential Information and the immediate cessation of further misappropriation by Alliance and Carroll.

59.

Alliance's counsel again failed to respond to Venturi's allegations.  Instead, on June 26, 2023, Alliance's counsel replied that they did not represent Carroll.

60.

Venturi contacted Carroll directly the same day to demand that he cease and desist from further accessing the Venturi Google Sheets, immediately return control of the account to Venturi, and preserve all documents and communications associated with his misappropriation. Venturi warned Carroll that if he did not confirm his compliance with these demands and his obligations under the Confidentiality Agreement, Venturi would be forced to initiate litigation to protect itself from further harm.  Carroll failed to respond.

61.

When Alliance finally substantively responded to Venturi's demand that it assist with Carroll's return of the Google Account and cease and desist from interfering with Venturi's contractual agreements with its Former Employees and using any misappropriated Venturi confidential business information and trade secrets, Alliance continued to downplay the seriousness of these actions—as demonstrated by the fact that it has failed to actually prevent the Former Employees from soliciting Venturi clients.

62.

Venturi now asks the Court to enforce the Confidentiality Agreement, enjoin Defendants from engaging in further misappropriation of Venturi's confidential information, and enjoin Alliance from further interfering with the Confidentiality Agreement and Venturi's contracts and business expectancies in its customers.

Page 19 - COMPLAINT

## FIRST CAUSE OF ACTION

### (Breach of Contract by all Defendants)

63.

Venturi incorporates herein all allegations in the preceding paragraphs of this Complaint.

64.

As a condition of their employment, the Former Employees entered into valid and binding contracts with Venturi, *i.e.*, the Confidentiality Agreement, in which they promised that they would maintain the confidentiality of Venturi's Confidential Information and, for the Restrictive Period, not engage in or support any efforts to solicit Venturi's employees or customers.

65.

Kazlauskas further promised he would not unfairly compete with Venturi during his employment and for the Restrictive Period, such as by assisting a competitor in the same manner as he had previously done for Venturi.

66.

As a subcontractor of Venturi, Alliance entered into a valid and binding contract with Venturi and its affiliates, in which it promised it would maintain the confidentiality of Venturi's Confidential Information for three years post-termination and while the Agreement was in effect and for two years post- termination not directly or indirectly solicit or accept any business from any contact or business relationship of any kind with any Venturi customer serviced by Alliance.

67.

The Former Employees received sufficient consideration to support the Confidentiality Agreement.

68.

Alliance received sufficient consideration to support the 2023 Subcontractor Agreement.

Page 20 - COMPLAINT

69.

Venturi performed its obligations under the Confidentiality Agreement and the 2023 Subcontractor Agreement.

70.

Under the Confidentiality Agreement, the parties also agreed that irreparable harm could result from any breach or threatened breach of the agreement and that injunctive relief was therefore appropriate to enforce its terms.

71.

The Former Employees breached their obligations under the Confidentiality Agreement.

72.

Alliance breached its obligations under the 2023 Subcontractor Agreement.

73.

The Former Employees' breach of the Confidentiality Agreement caused Venturi injury including, among other things, threats to the integrity of its trade secrets and confidential information, loss of goodwill and business reputation, disruption and reduction of business, threat to enforcement of reasonable contracts, creation of uncertainty regarding Venturi's business, present and future economic loss and other irreparable damages for which it has no adequate remedy at law and that if not enjoined will cause irreparable harm to Venturi and should therefore be enjoined as expressly authorized by the terms of the Confidentiality Agreement.

74.

Alliance's breach of the 2023 Subcontractor Agreement caused Venturi injury including, among other things, threats to the integrity of its trade secrets and confidential information, loss of goodwill and business reputation, disruption and reduction of business, threat to enforcement of reasonable contracts, creation of uncertainty regarding Venturi's business, present and future economic loss and other irreparable damages for which it has no adequate remedy at law and that

Page 21 - COMPLAINT

if not enjoined will cause irreparable harm to Venturi and should therefore be enjoined as expressly authorized by the terms of the 2023 Subcontractor Agreement.

75.

Under the terms of the Confidentiality Agreement, Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets by Defendants, compensatory damages, and an award of Venturi's reasonable attorneys' fees and costs.

76.

Under the 2023 Subcontractor Agreement, Alliance agreed Venturi would be entitled to obtain injunctive relief against Alliance enjoining and restraining any unauthorized disclosure or use of Venturi's proprietary or Confidential Information, and an award of Venturi's reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty by Carroll, Johnson, and Kazlauskas)

77.

Venturi incorporates herein all allegations in the preceding paragraphs of this Complaint.

78.

By virtue of their employment with Venturi, Carroll, Johnson, and Kazlauskas owed a fiduciary duty of loyalty and fidelity to Venturi's interests.  This duty obligated Carroll, Johnson, and Kazlauskas at all times during their employment to act solely and exclusively in Venturi's best interests even to the exclusion of their own self-interest.

79.

Carroll violated that duty in at least five distinct ways:

Page 22 - COMPLAINT

- First, Carroll breached his fiduciary duty of loyalty both before and after his resignation by misappropriating Venturi's protectible confidential information and trade secrets for his and Alliance's benefit;

- Second, by acting for a direct competitor while still employed by Venturi;

- Third, by failing to perform his job duties while employed by Venturi so that he could benefit a competitor;

- Fourth, by soliciting Venturi customers for Alliance while still employed by Venturi;

- Fifth, by soliciting other Venturi employees to terminate their employment with Venturi and to take employment with Alliance.

All these actions were designed to benefit Carroll to the detriment of Venturi in his post-resignation competition with Venturi.

80.

Johnson also violated this duty in at least four distinct ways:

- First, Johnson breached her fiduciary duty of loyalty both before and after her resignation by misappropriating Venturi's confidential and proprietary information for her and Alliance's benefit;

- Second, by acting for a direct competitor while still employed by Venturi;

- Third, by failing to perform her job duties while employed by Venturi so that she could benefit a competitor; and

- Fourth, by soliciting Venturi customers for Alliance while still employed by Venturi.

81.

Kazlauskas also violated this duty in at least four distinct ways:

Page 23 - COMPLAINT

- First, Kazlauskas breached his fiduciary duty of loyalty both before and after his resignation by misappropriating Venturi's confidential and proprietary information for his and Alliance's benefit;

- Second, by acting for a direct competitor while still employed by Venturi;

- Third, by failing to perform his job duties while employed by Venturi so that he could benefit a competitor; and

- Fourth, by soliciting Venturi customers for Alliance while still employed by Venturi.

82.

As a direct and proximate result of Carroll, Johnson, and Kazlauskas's actions, Venturi has suffered and is suffering injury including, among other things, threats to the integrity of its trade secrets, loss of goodwill and business reputation, disruption of business, threat to enforcement of reasonable contracts, creation of uncertainty regarding Venturi's business, present and future economic loss and other damages in an amount to be proven at trial.

83.

Carroll, Johnson, and Kazlauskas should not be permitted to retain the benefits they gained from their breaches of fiduciary duty.

84.

Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets by Defendants, compensatory damages, restitution of the value of the benefits improperly obtained by Carroll and Johnson through their breaches of fiduciary duty and loyalty, disgorgement of the compensation paid Carroll, Johnson, and Kazlauskas during the period of their disloyal conduct constituting the breaches of their fiduciary duties, and other such other and further relief as this Court deems just and proper.

Page 24 - COMPLAINT

## THIRD CAUSE OF ACTION

## (Violation of the Defend Trade Secrets Act by Carroll (18 U.S.C. §§ 1832-1839))

85.

Venturi realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

86.

By virtue of his position with Venturi, Carroll obtained access to Alliance's trade secrets and confidential information.

87.

As set forth above, Carroll gained access to Venturi's trade secrets including, Venturi's Google Sheets and its spreadsheets, its current and prospective client lists and client information, client pricing information and customer contact lists, its business and marketing strategies, strengths and weaknesses, scheduling and interruptions, and pricing and cost information related to its business, and all such similar information necessary for Venturi to conduct its business in a competitive marketplace.

88.

Venturi's trade secrets relate to services provided in or intended for use in interstate commerce because they  relate to Venturi's provision and coordination of services across multiple states.

89.

Venturi's trade secrets are not known outside of the company and are only accessible to Venturi personnel in connection with the performance of their employment responsibilities. Carroll's position at Venturi was such that he acquired access to and knowledge of Venturi's protectible confidential information under circumstances giving rise to a duty to maintain the secrecy of such information.  Carroll also explicitly agreed in the Confidentiality Agreement to maintain the secrecy of such information.

Page 25 - COMPLAINT

90.

Venturi keeps its trade secrets from disclosure through all appropriate and necessary means, including requiring Venturi employees to execute confidentiality agreements, restricting access to such information, and employing electronic and data security measures.

91.

Venturi's trade secrets are not available to the public except through improper means.

92.

Venturi's confidential, proprietary, and trade secret information derives substantial, independent economic value from not being generally known to the public or to competitors, who could obtain economic value from the information.  Venturi expended substantial material, financial, and human resources to develop this information, which cannot be easily acquired or replicated by others.

93.

By virtue of his former employment and his agreement to the Confidentiality Agreement, Carroll has an ongoing duty to maintain and preserve Venturi's confidential and proprietary information.  Upon his resignation, Carroll was no longer authorized to control, access, or use Venturi's trade secrets or other confidential and proprietary information.

94.

Carroll acquired Venturi's trade secrets through improper means and knew or had reason to know that those trade secrets were acquired through improper means.  Specifically, Carroll knowingly violated his common law, contractual, and statutory duties by transferring Venturi's protectible confidential information to his own outside email account.  Venturi did not consent to Carroll's transfer of that information to his own outside email account.

Page 26 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

95.

On information and belief, Carroll intentionally disclosed Venturi's trade secrets to or for the benefit of Alliance in violation of his common law, contractual, and statutory duties to Venturi.

96.

On information and belief, Defendants continue to use and benefit from Venturi's trade secrets obtained through improper means and without the consent of Venturi and are thereby unjustly enriched.

97.

Carroll's use of Venturi's protectible confidential information benefits him by enabling him to perform the Branch Manager level tasks at Alliance, including by unfairly soliciting Venturi customers and employees.  Carroll should not be permitted to retain that benefit nor be permitted to piggy-back off Venturi's expenditure of time and effort in developing the strategies, tools, and technologies so as to give himself (and Alliance) an undeserved jump start in the remediation industry.

98.

Venturi has a right to recover.

99.

Continued use of Venturi's confidential and proprietary trade secrets will result in irreparable harm that would not be possible to remedy.

100.

Carroll's continued use of Venturi's confidential and proprietary trade secrets will result in imminent, irreparable, and immeasurable financial loss.

101.

There are no other adequate remedies at law available to Venturi.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

102.

Carroll's misappropriation of Venturi's trade secrets was willful or malicious.

103.

By reason of the foregoing, Venturi has been damaged in an amount to be proven at trial. Pursuant to ORS 646.465, Venturi is entitled to recover damages adequate to compensate for misappropriation and any unjust enrichment gained by Carroll's misappropriation of Venturi's trade secrets.

104.

Pursuant to ORS 646.463, Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets.

105.

Because Carroll's misappropriation was willful and malicious, Venturi is entitled to punitive damages in an amount equal to double its damages and any unjust enrichment.  Pursuant to ORS 646.463, Venturi is entitled to an award of its attorney fees.

**FOURTH CAUSE OF ACTION**

**(Violation of the Oregon Uniform Trade Secrets Act by Carroll (ORS 646.461 to 646.475))**

106.

Venturi realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

107.

As set forth above, Carroll had access to Venturi's trade secrets.

108.

As set forth above, Venturi protects its trade secrets.

Page 28 - COMPLAINT

109.

As set forth above, Venturi's trade secrets are not available to the public except through improper means.

110.

As set forth above, Venturi's trade secrets derive substantial, independent economic value from not being generally known to the public or to competitors, who could obtain economic value from the information and Venturi expended substantial material, financial, and human resources to develop this information, which cannot be easily acquired or replicated by others.

111.

As set forth above, Carroll had a common law, contractual, and statutory duty to protect Venturi's trade secrets.  Upon his resignation, Carroll was no longer authorized to control, access, or use Venturi's trade secrets or other confidential and proprietary information.

112.

As set forth above, Carroll acquired Venturi's trade secrets through improper means and knew or had reason to know that those trade secrets were acquired through improper means.

113.

On information and belief, Carroll intentionally disclosed Venturi's trade secrets to or for the benefit of Alliance in violation of his common law, contractual, and statutory duties to Venturi.

114.

On information and belief, Carroll continues to use and benefit from Venturi's trade secrets obtained through improper means and without the consent of Venturi and are thereby unjustly enriched.

Page 29 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

115.

Venturi has a right to recover.

116.

Continued use of Venturi's confidential and proprietary trade secrets will result in irreparable harm that would not be possible to remedy.

117.

Carroll's continued use of Venturi's confidential and proprietary trade secrets will result in imminent, irreparable, and immeasurable financial loss.

118.

There are no other adequate remedies at law available to Venturi.

119.

Carroll's misappropriation of Venturi's trade secrets was willful or malicious.

120.

By reason of the foregoing, Venturi has been damaged in an amount to be proven at trial. Pursuant to ORS 646.465, Venturi is entitled to recover damages adequate to compensate for misappropriation and any unjust enrichment gained by Carroll's misappropriation of Venturi's trade secrets.

121.

Pursuant to ORS 646.463, Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets.

122.

Because Carroll's misappropriation was willful and malicious, Venturi is entitled to punitive damages in an amount equal to double its damages and any unjust enrichment.  Pursuant to ORS 646.463, Venturi is entitled to an award of its attorney fees.

Page 30 - COMPLAINT

## FIFTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations by All Defendants)

123.

Venturi realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

124.

Venturi entered into contractual agreements with all of its employees.

125.

On information and belief, Alliance knew that all of the Venturi employees were subject to valid contractual obligations of confidentiality and customer and employee non-solicitation.

126.

Defendants knew that all of the Venturi employees were subject to valid contractual obligations of confidentiality and customer and employee non-solicitation.

127.

Venturi also entered into multiple different contractual relationships with clients for specific job opportunities that Venturi exclusively serviced pursuant to those contracts.

128.

Defendants knew that Venturi had valid contractual relationships with clients for specific job opportunities that Venturi exclusively serviced pursuant to those contracts.

129.

Defendants intentionally interfered with Venturi's contractual relations with its employees by inducing Venturi's employees to breach the terms of their contracts with Venturi.

130.

Defendants interfered with the Venturi's contractual relations through improper means and for an improper purpose, including through misappropriating Venturi's confidential and

Page 31 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

proprietary information and the inducing Venturi's former employees to breach the terms of their contracts with Venturi.

131.

Venturi has suffered damages as a result of Defendants' intentional interference with Venturi's contractual relations in an amount to be proven at trial.

132.

Defendants' continued use of Venturi's confidential and proprietary trade secrets will result in imminent, irreparable, and immeasurable financial loss.  There are no other adequate remedies at law available to Venturi.

133.

Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets by Defendants, damages, restitution, unjust enrichment and other such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage by All Defendants)**

134.

Venturi realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

135.

Venturi has certain longstanding economic relationships with clients and employees from which Venturi derives economic benefits.

136.

Defendants knew that Venturi's clients and employees were in an economic relationship with Venturi from which Venturi derives economic benefits.

Page 32 - COMPLAINT

137.

Defendants engaged in unfair and unlawful conduct to interfere with Venturi's client and employee relationships by, among other things, misappropriating Venturi's trade secrets and then using the information to compete against Venturi for Venturi's customers after joining Alliance.

138.

Defendants intentionally interfered with Venturi's prospective economic advantage by misappropriating Venturi's confidential and proprietary information and inducing Venturi's former employees to solicit Venturi's customers and employees in breach of the terms of their contracts with Venturi.

139.

Defendants interfered with the Venturi's prospective economic advantage through improper means and for an improper purpose, including through misappropriating Venturi's confidential and proprietary information and the inducing Venturi's former employees to breach the terms of their contracts with Venturi.

140.

By engaging in this conduct, Defendants intended to disrupt Venturi's relationships and/or knew that disruption of these relationships was substantially certain to occur as a result of their conduct. Venturi has suffered damages as a result of Defendants' intentional interference with Venturi's prospective economic advantage in an amount to be proven at trial.

141.

Venturi is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent actual or threatened misappropriation of Venturi's trade secrets by Defendants, damages, restitution, unjust enrichment and other such other and further relief as this Court deems just and proper.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201
(503) 241-2300 main · (503) 778-5299 fax

## SEVENTH CAUSE OF ACTION

### (Violations of the Computer Fraud and Abuse Act by Carroll and Kazlauskas

### (18 U.S.C. § 1030(a)))

142.

Venturi realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

143.

Carroll violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C) when he intentionally accessed Venturi's protected computer and Google Sheets without authorization and by exceeding authorized access, as described below, thereby obtaining information from a protected computer, and causing Venturi damages and/or loss aggregating to at least $5,000 in value over a one-year period.  Kazlauskas violated this provision when he intentionally accessed Venturi's protected computer without authorization and by exceeding authorized access in order to destroy all data contained on Venturi's protected computer and causing Venturi damages and/or loss aggregating to at least $5,000 in value over a one-year period.

144.

Carroll also violated the CFAA, 18 U.S.C. § 1030(a)(5)(C) when he intentionally accessed Venturi's protected computer without authorization and caused Venturi damages and/or loss as a result of that conduct aggregating to at least $5,000 in value over a one-year period. Kazlauskas violated this provision when he intentionally accessed Venturi's protected computer without authorization in order to destroy all data contained on Venturi's protected computer and causing Venturi damages and/or loss aggregating to at least $5,000 in value over a one-year period.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

145.

During their employment, Venturi provided Carroll and Kazlauskas with Venturi computers to perform their duties for the benefit of Venturi.  Carroll and Kazlauskas each had authorization to access Venturi's computer systems only for the limited purpose of performing his responsibilities as a Venturi employee.

146.

As set forth above, Carroll exceeded this limited authorization by using Venturi's protected computer to access Venturi's Google spreadsheets for the purpose of assisting Alliance in soliciting Venturi employees and by accessing Venturi's computer and computer systems for the purpose of transferring control of Venturi's Google Sheets to his personal email account. Venturi did not authorize Carroll to access documents for the use of Alliance, nor did it authorize Carroll to transfer Venturi's Google Sheets, nor was Carroll doing so within the scope of his employment responsibilities.

147.

Carroll resigned from Venturi on June 1, 2023.  After that date, Carroll had no authorization to access Venturi's computers and computer systems, including Venturi's Google Sheets.

148.

Nevertheless, Carroll repeatedly accessed Venturi's computer, computer systems, and Venturi's Google Sheets spreadsheets after June 1, 2023 without authorization, including but not limited to June 13, 2023, when Carroll used Venturi's computer to access Venturi's Google Sheets and its PDX Mitigation Spreadsheet.  On information and belief Carroll has continued to use this spreadsheet as one of the multiple "anonymous users" who appear in Venturi's Google spreadsheets.  Kazlauskas accessed Venturi's protected computer systems post-resignation to destroy Venturi's data in violation of his Confidentiality Agreement.

Page 35 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

149.

Carroll and Kazlauskas undertook these actions knowingly and intentionally, accessed Venturi's computer systems without permission for the benefit of themselves and their new employer, Alliance.

150.

Carroll knew that the information he was taking was not permitted to be moved out of Venturi's custody and that his misappropriation of such information was not reasonably necessary to the performance of his employment obligations with Venturi.

151.

Kazlauskas knew he was not allowed to destroy or alter Venturi's computer data by virtue of his Confidentiality Agreement.

152.

Venturi's computer systems are used in interstate commerce and communication, and Carroll's conduct involved interstate commerce in that without authorization he intentionally accessed Venturi computer systems, both physical and in the cloud, in order to misappropriated documents relating to Venturi services across multiple states.  Kazlauskas's actions involved interstate commerce because he  improperly accessed Venturi's computer system used to conduct its business in interstate commerce in order to destroy data regarding that business in interstate commerce.

153.

As a result of each of Carroll's and Kazlauskas's unlawful conduct, Venturi has suffered loss in an amount in excess of the $5,000 statutory minimum during a one-year period as to each of Carroll and Kazlauskas, in an amount to be proved at trial.  This loss includes, without limitation, the costs Venturi has incurred in investigating and responding to Carroll and Kazlauskas's misconduct and attempting to recover its misappropriated data.

Page 36 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

## PRAYER FOR RELIEF

WHEREFORE, Venturi respectfully prays for a judgment and the following relief against Defendants:

A.  Entry of a temporary restraining order and preliminary injunction, followed by a permanent injunction that:

1.      Enjoins Defendants from all actions in violation of, or that would interfere with, Venturi's rights under the Confidentiality Agreement, including but not limited to enjoining Defendants from disclosing, misusing, or misappropriating for their use or the use of others any confidential or proprietary information or trade secrets of Venturi or soliciting Venturi customers or employees;

2.      Enjoins Alliance from all actions in violation of, or that would interfere with, Venturi's rights under the 2023 Subcontractor Agreement, including but not limited to enjoining Defendants from disclosing, misusing, or misappropriating for their use or the use of others any confidential or proprietary information or trade secrets of Venturi or soliciting Venturi customers prohibited under the Agreement;

3.      Requires Defendants to return to Venturi's counsel all property, documents, files, reports, work product, and/or other materials, that Defendants have in their possession, custody, or control that were obtained directly or indirectly from Venturi or that constitute work product owned by Venturi;

4.      Enjoins the Former Employees, for a period of twelve months after entry of the temporary restraining order, from engaging in any activities that directly or indirectly solicit Venturi's employees or customers in violation of the terms of the Confidentiality Agreement, and that such period be extended or equitably tolled to the extent warranted by the fact of the case;

5.      Enjoins Kazlauskas, for a period of twelve months after entry of the temporary restraining order, from assisting Alliance in the development, sales strategies, best

Page 37 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201
(503) 241-2300 main · (503) 778-5299 fax

practices, support, marketing, or solicitation of owners or managers of multi-family properties and commercial rental properties multi-family and commercial accounts, such as property management companies, in violation of the terms of the Confidentiality Agreement, and that such period be extended or equitably tolled to the extent warranted by the fact of the case;

6.    Enjoins Alliance from interfering with Venturi's contractual or economic relations by inducing or attempting to induce Venturi's present or former employees to breach the terms of their contracts with Venturi; and

7.    Enjoins Alliance from providing services to all customers it obtained through Carroll Johnson, and Kazlauskas's solicitation.

B.    For judgment against Defendants for damages, including damages for unjust enrichment, in an amount to be proven at trial but currently believed to be well in excess of $75,000.

C.    Pre-judgment and post-judgment interest;

D.    An award of Venturi's reasonable attorneys' fees and costs; and

E.    Such further relief as the Court deems just and equitable.

DATED this 7th day of July, 2023.

DAVIS WRIGHT TREMAINE LLP

By: s/ Chris Swift
Chris Swift, OSB #154291
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
chrisswift@dwt.com
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Zana Bugaighis, WSBA# 43614 (*pro hac vice pending*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:  (206) 757-8304
zanabugaighis@dwt.com

Attorneys for Plaintiff

Page 38 - COMPLAINT